IN RE K.S.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-016-CV

IN THE MATTER OF 

K.S. 

------------

FROM THE PROBATE COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

K.S. appeals the trial court’s judgment for court-ordered inpatient mental health services and the court’s order authorizing the administration of psychoactive medication.  In his issue on appeal, appellant (1) challenges the legal and factual sufficiency of the evidence to support some of the jury’s findings regarding his mental illness, (2) complains that the trial court abused its discretion by ordering him to receive mental health services as an inpatient rather than on an outpatient basis, and (3) argues that the trial court’s order 
authorizing the administration of psychoactive medication
 
does not comply with section 574.106(a-1) of the health and safety code.  We affirm.

Section 574.035(a) of the health and safety code provides that a trial judge may order a proposed patient to receive court-ordered extended inpatient mental health services if the jury finds from clear and convincing evidence that

(1) the proposed patient is mentally ill;

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to himself;

(B) is likely to cause serious harm to others;  or

(C) is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient’s ability to function independently, which is exhibited by the proposed patient’s inability, except for reasons of indigence, to provide for the proposed patient’s basic needs, including food, clothing, health, or safety;  and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment; and

(3) the proposed’s patient’s condition is expected to continue for more than 90 days.
(footnote: 2)

Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.
(footnote: 3)  To be clear and convincing under section 574.035(a), the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm (1) the likelihood of serious harm to the proposed patient or others or (2) the proposed patient’s distress and the deterioration of the proposed patient’s ability to function.
(footnote: 4)
 In his first complaint, Appellant challenges the legal and factual sufficiency of the evidence to support the jury’s findings that, as a result of his mental illness appellant (1) is likely to cause serious harm to himself, (2) is likely to cause serious harm to others, and (3) is unable to make a rational and informed decision as to whether or not to submit to treatment.
(footnote: 5)
 The evidence shows as follows:

Before his trial on January 3, 2007, appellant had been hospitalized in the state hospital for fifteen months. 
 Dr. Emory J. Sobiesk, a hospital physician who had examined appellant, filed a certificate documenting
 that appellant was withdrawn and resisted treatment, often refusing to speak, suffered from grandiose delusions, and believed that medications are “evil.” 

Debbie Wilkinson, a mental health court liaison, testified that she had met with appellant every three weeks in the four or five months before trial.
(footnote: 6)  During that time, appellant had refused to speak with her or discuss his need for treatment because he believed he was a medical doctor who could meet his own needs.  

Dr. James Shupe, who had examined and interacted with appellant several times during his fifteen months in the state hospital, opined that appellant was “intellectually very bright” but had a “very severe” form of mental illness that interfered with his ability to function.  Dr. Shupe diagnosed appellant as suffering from psychotic disorder, not otherwise specified, which was probably caused by schizophrenia.  Dr. Shupe testified that appellant suffered from delusions that he was Satan or a spiritual cardiologist from Princeton, as a result of which he could not logically discuss his mental illness or understand why he needed any medication or who was prescribing it.  Dr. Shupe testified that appellant believed he should not be in the state hospital and that he was receiving medication there because people were trying to poison and hurt him.  Thus, Dr. Shupe opined that appellant lacked the capacity to make decisions regarding the administration of his medications.

Applying the appropriate standards of review,
(footnote: 7) we hold that the State established by clear and convincing evidence that, as a result of his mental illness, appellant is unable to make a rational and informed decision as to whether or not to submit to treatment.
(footnote: 8)  Accordingly, we hold that the evidence is legally and factually sufficient to support the jury’s finding, and we overrule this complaint.

Next, appellant contends that the trial court abused its discretion by ordering him to submit to inpatient mental health services rather than being treated on an outpatient basis. 

When, 
as in this case, the jury determines that a person is mentally ill and meets the criteria for court-ordered mental health services, the judge must dismiss the jury and may hear additional evidence on alternative settings for care before entering an order relating to the setting for the person’s care.
(footnote: 9)  The 
judge must order the services provided in the least restrictive appropriate setting available.
(footnote: 10)  The least restrictive appropriate setting is the treatment setting that

(1) is available;

(2) provides the patient with the greatest probability of improvement or cure; and

(3) is no more restrictive of the patient’s physical or social liberties than is necessary to provide the patient with the most effective treatment and to protect adequately against any danger the patient poses to himself or others.
(footnote: 11)

Further, if the jury finds that the person meets the commitment criteria prescribed by section 574.035(a), the judge may enter an order committing the person to a mental health facility for inpatient care.
(footnote: 12)
 Here, it is undisputed that the inpatient mental health services are available.  In addition, Dr. Shupe testified regarding the risks
 and benefits of the medications that had been prescribed for appellant.  Potential side effects include tardive dyskinesia, a movement disorder, addiction, sedation, physical instability, liver damage, and kidney damage; however, the hospital uses lab tests to monitor the patient for these things.  Regarding benefits, Dr. Shupe testified that they outweighed the risks because the medications adjust the patient’s thinking and help him fit in with reality so that he can function in the real world.  Dr. Shupe considered appellant’s prognosis “somewhat guarded” due to his severe mental illness; but in the past there had been some improvement when appellant had taken the medications pursuant to a court order.  Further, Dr. Shupe explained that, “for most people, as long as they’re cooperative, at some point we can find a medicine that will benefit them.”  Thus, Dr. Shupe believed that there was a chance that the medications could eventually cause appellant to improve enough to function safely outside the hospital.

Moreover, Dr. Shupe opined that, if released from the hospital, appellant would not take his medications and would not be able to provide for his basic needs due to his mental illness.  Dr. Shupe testified that appellant had not taken his court-ordered medications for the two weeks before trial and seemed a little more anxious and disorganized as a result.  Dr. Shupe explained that, even with the medications, appellant was sometimes aggressive and threatening towards hospital patients and staff.  Without treatment, however, appellant would get “much worse,” would become even more psychotic and impulsive, and would put himself in situations where he would be a danger to both himself and others by getting into physical altercations due to his beliefs caused by his mental illness.  For these reasons, 
Dr. Shupe opined that court-ordered inpatient treatment with medications—rather than outpatient treatment—was the least restrictive treatment option available to appellant
. 

Having carefully considered the evidence, we hold that the trial court did not abuse its discretion by concluding that court-ordered inpatient mental health services were the least restrictive appropriate setting available to appellant.  Therefore, we overrule appellant’s second complaint.

In his last argument, appellant complains that the trial court’s order authorizing the administration of psychoactive medication
 improperly omits a finding regarding whether appellant presents a danger to himself or others. 
 No such finding was required in this case.

Section 574.106 (a-1) provides that a trial court may issue an order authorizing psychoactive medication if the court finds by clear and convincing evidence that 
the patient lacks the capacity to make a decision regarding the administration of his proposed medication, and treatment with the proposed medication is in the patient’s best interest.
(footnote: 13)  The trial court made this finding in its order, in full compliance with the statute. 

For the foregoing reasons, we overrule appellant’s complaints on appeal.  We affirm the trial court’s 
judgment for court-ordered inpatient mental health services and the court’s order authorizing the administration of psychoactive medication.

PER CURIAM

PANEL F: CAYCE, C.J.; WALKER and MCCOY, JJ.

DELIVERED:  July 19, 2007

FOOTNOTES
1:
See
 
Tex. R. App
. P. 47.4.

2:
Tex. Health & Safety Code Ann.
 § 574.035(a) (Vernon Supp. 2006).  When, as in this case, the proposed patient has already been subject to an order for extended mental health services, the jury is not required to make a fourth finding, that the proposed patient has received court-ordered inpatient mental health services for at least 60 consecutive days during the preceding twelve months.  
Id.
 §  574.035(a)(4), (d).

3:
Tex. Civ. Prac. & Rem. Code Ann 
§ 41.001(2) (Vernon Supp. 2006
);
 
State v. Addington,
 588 S.W.2d 569, 570 (Tex. 1979).

4:
Tex. Health & Safety Code Ann.
 § 574.035(e).

5:
See id. 
§ 574.035(a)(2)(A)–(B), (C)(iii).  Appellant does not challenge the jury’s other two findings under section 574.035(a)(2)(C).

6:
Trial occurred in January 2007. 

7:
See Diamond Shamrock Ref. Co. v. Hall
, 168 S.W.3d 164, 170 (Tex. 2005); 
Sw.
 
Bell Tel. Co. v. Garza
, 164 S.W.3d 607, 627 (Tex. 2004) (setting out legal sufficiency standard of review); 
In re C.H.
, 89 S.W.3d 17, 25, 28 (Tex. 2002) (setting out factual sufficiency standard).

8:
See
 
Tex. Health & Safety Code Ann.
 § 574.035(a)(2)(C)(iii), (e).  In light of our holding regarding this issue, we need not consider appellant’s legal and factual sufficiency challenge to the jury’s findings on the alterative grounds that appellant is likely to cause serious harm to himself or others as a result of his mental illness.  
See id.
 § 574.035(a)(2)(A)–(B); 
Tex. R. App. P.
 47.1.

9:
Id.
 §  574.036(a)–(b) (Vernon 2003); 
Sims v. State,
 
816 S.W.2d 502, 508 (Tex. App.—Houston [1st Dist.] 1991, writ denied)
.

10:
Tex. Health & Safety Code Ann.
 §  574.036(d).

11:
Id.
 §  571.004.

12:
Id.
 §  574.036(e).

13:
Tex. Health & Safety Code Ann.
 § 574.106(a-1)(1) (Vernon Supp. 2006).